Good morning. May it please the Court, I'm Charles Nickel, appearing for the petitioner Amrik Singh. This case was entirely regarding the credibility of the respondent, of the petitioner. Neither the Board of Immigration Appeals nor the immigration judge gave a review of the testimony, assuming the facts to be true, or made a determination of whether those facts would support a grant of asylum. And withholding of removal. This case was remanded at the request of the service once, so what was the purpose of that? There was also the, regarding the, they were consolidated because he had also applied separately for relief under the Convention Against Torture. And the cases were consolidated and it was brought back. The, what was not contested is that the Board of Immigration Appeals and the immigration judge never challenged country conditions regarding the fact that the government did engage in this type of persecution against persons who were supporting a, the Khalistan movement. And there were never any inconsistencies pointed out regarding his testimony of two arrests and torture he suffered at the hands of the Indian police or the death threat he received shortly before leaving India. The immigration judge denied the case based on her feeling that he did not have sufficiently sophisticated knowledge of politics in the Punjab. And that documentation which he supported in support of his claim was suspect. The doctor's letter and also the letter from the Shir Amani Akali Dal. Also, this individual, the person we're dealing with, is a farmer from the Punjab. And the reason he became involved in politics, he testified, was over issues of water. Water from the Punjab was being sent out to other states. And that he testified that, you know, they'd have shortages and that the cost of water would become very high. And therefore, he supported the independence of Khalistan from the rest of India, which he felt was exploiting them. He was not an officer in the Shir Amani Akali Dal. He was simply a member. He attended rallies. He put up political posters. And the immigration judge, you know, found that he did not have a real historical grasp of how the Shir Amani Akali Dal was organized and the history of the organization. However, I think that's probably an unreasonable expectation given his level of education and also his level of participation. I guess the question I'd like you to address is about these two letters and I guess two questions about them. A, was the IJ entitled to disbelief as explanations for what do facially appear to be discrepancies? And B, did she make an adverse credibility determination based on those letters or simply discount the letters? Well, I don't think the letters are not the Petitioner's testimony. I mean, they're coming from a third party. And the judge did make an adverse credibility. If somebody submits letters that appear to be doctored letters, you have some reason to disbelieve whatever else they're saying, no? These were not on irrelevancies. They were important information. The case was continued. They had a hearing first and the submission of the doctor's letter to begin with, the attorney for the government noted, well, there's no date on this letter. There's no complete address. It's just the name of the physician. And that's inadequate. So after a continuation of several months, came back with a letter in which the address had been included and it had been dated. And it was noted that this was a photocopy. Now, the Petitioner said that, you know, he requested for his brother to obtain the needed information. The letter was no good because it didn't have a date. It didn't have an address. What date was on it? The date was, well, it's right here. There was no date on the original submission. Right. I know. But on the second version, what date was on it? And the date on the letter. Where is that letter? January 30th, 1993. Right. So how could there be a letter? Why is there all of a sudden a letter with the date January 30th, 1993, when there was no date on the original letter? Well, I mean, it's his understanding that he took it to the doctor and the doctor wrote in the address and dated the letter from the record. What's the case, Doctor? First of all, the original was in the court, right? Yeah. The original was in the court. So one question is how did the doctor get this letter? What did the doctor have? Well, the Petitioner didn't know, but he offered two suggestions. He said one was that they would have a the doctor would have a photocopy of it or a copy of the letter or that perhaps his brother had the letter and took it to the doctor. And then he emailed him a copy and that it was mailed back to him. The address was simply written in by hand. Where is this in the record, this letter, the second one? I have it on my record as 51. Now, there are two administrative records in this. And I may be working with the original administrative record before the case was consolidated. We have a copy of it. Okay. Thanks. So supposing there was good reason to believe that this was not an authentic letter, would that be a basis? Was it the basis for the adverse credibility determination and could it be? Yes, it was a basis for the adverse credibility finding. I don't think it's sufficient. You know, if the court were to disregard this letter and give it no evidentiary weight, you know, for whatever reason, if the letter was, you know, not proper, the judge still never attacked his credibility as far as the events of actually what occurred to him in India. And that testimony standing alone would qualify him for asylum on the basis of past persecution, based upon his political activities and his expressed political opinion. There's this other, to whoever it may concern, where they have him living at a particular address. Right. Which was not correct. I think he had a reasonable explanation for that. He said that he requested that letter in 1996. He never received it at the address where he was living in Reno at that time. And they resubmitted it and he got it just shortly before the hearing at his current address. It had the back date of when it was originally submitted. The only change in the letter, of course, was that it contained his current address. And, you know, the government made issue on that in saying, well, the author of this letter would have to be clairvoyant in order to, you know, know what your future address is going to be. But without any hesitancy on the part of the petitioner, he explained that he never received the original letter. And he had to request for it again because his individual hearing was coming up. And so it was resubmitted and they submitted it to the address that he provided. He said, now I'm living here. But it did contain the date that the letter was originally submitted. Well, that's the explanation. I think it's reasonable. Well, but back to the question that was asked earlier, he is the one who tendered it to the court with the phony dates, is he not? Well, he's given it to the court. But, I mean, as far as the phony date, it's... Well, now wait. In the adversary system, the proffer or the proponent of this evidence that he knows as well as anybody else who examines it knows it's phony, he's the one who presented it. Is he not? To answer that question, is it compelling? Yes. He did. Now, is that not a factor in credibility when you have a party producing an exhibit that on its face is phony? That's serious, is it not? It's serious. And it goes to the credibility of the party who delivers it to the fact finder, does it not? Yes. And that is one of the factors that this I.J. used in saying, I distrust the credibility of this Petitioner. Now, where are we? Well, it didn't attack the contents of the letter. It's simply going to... You understand exactly what I'm talking about. I understand exactly. And I think he gave... In other words, no matter how you look at it, this letter was not written on March, the date it said it was written on, nor was the other one. No, I think that as far as the letter from the political party, it was written on the date. The original letter was written on that date. Well, the original letter might have been, but the second one wasn't. And the only change was the address. The only change was that they directed it to the address where he was currently living because he hadn't received the other letter. I don't know that that necessarily makes it a phony letter. We're referring to a second letter. Well, yes. The I.J. was skeptical about the information he had about the party. Yes. And then with these letters, which he found skeptical, can we say that he was... that there was no substantial evidence to support his view that this fellow's testimony wasn't true? No, I don't think that's a conclusion that you would have to reach. You know, the – those are factors they can take in the weight of the evidence. And here the immigration judge said, well, you know, this has either been backdated or I don't trust this evidence, so I'm going to exclude that. And as far as the doctor's letter, he offered an explanation that it was sent back there and the doctor put in the address and dated it and forwarded it on to him. I don't know that that would knock out the rest of his testimony, which no one challenged as far as the – that there was a massive movement by the part of the Indian government to suppress people who were even marginally involved in the Khalistan movement and that the types of arrests for the activities that he engaged in, such as putting up political posters, if he was caught in the act of doing that, as he was, that those people were subjected to severe torture. Okay. Thank you very much, Your Honor. Thank you. I appreciate the argument. Okay. Reserves of that. Oh. Am I out of time? You're out of time. Oh, sorry. Okay. Good morning, Your Honors. Carol Federighi on behalf of the Attorney General. As Your Honors pointed out, the Respondent did ask for the case to be remanded to the Board. That was because the Board's first decision, which is on page 297 of the administrative record, and I'm going to be using the page numbers for the latest edition, the administrative record that was filed in the later case number, that it was the decision was very brief and really just boiled down to one sentence in which the Board said the immigration judge's adverse credibility finding specifically addressed the applicant's asylum claim and that was basically it. So because that was felt not to be a sufficient enough description of the basis for the Board's decision, the Respondent decided to remand the case, and the Board did issue a more specific decision on remand. And in that decision, as Your Honors noted, the Board concluded that petitioner's submission of what were highly suspect documents to corroborate what was already a vague and doubtful testimony rendered him not credible. As Your Honors know, the standard is whether the record compels a finding that the petitioner was credible. In this case, the record does not compel such a finding. First, the Board reasonably agreed with the immigration judge that the authenticity of the two documents that petitioner submitted was questionable and that the unreliability of these documents reflected directly on petitioner's credibility and supported an adverse credibility finding. The one thing that I'm confused about is whether the suspicionousness of the letters, which was never exactly resolved, I mean, they were odd and wouldn't I understand the statements that are made both by the IJ and the BIA was that they accorded the exhibits no weight. That's one thing. But were the exhibits used negatively, and should they have been, with regard to the credibility determination? I'm not sure that they just limited it to saying that they according the documents no weight. I think looking over the Board's decision, the Board cites these documents as the basis directly for the adverse credibility finding. I think the immigration judge, I know that with regard to the BIA. But I think the BIA and the IJ would have said that the exhibits no weight. And then they say that it was not credible because of discrepancies noted in her decision, the conflicts between the applicant's testimony, the background evidence regarding the Akali Dal party and elections in India. And I couldn't tell whether either she or the Board was recluding within these considerations. Well, the Board, looking at the second page of the Board's decision, the meat of it is the first, is the full paragraph on that page. And the Board, the meat of the discussion of the letter issue is on, is in that paragraph. And the Board does make it clear in that paragraph, I think, that it is treating the problems with the documents, the suspiciousness about their provenance as reflecting on the Petitioner's credibility and not just giving the documents no weight. It's actually putting them on the negative end of the scale in terms of Petitioner's credibility. I may be missing that. But where do you see that? On page, this is the second page of the Board's decision, which is on page three of the administrative record. The Board says, we note the immigration judge's concern over important inconsistencies in the documents. And then it goes on to describe those inconsistencies and that no adequate explanation was provided, caused them questionable, and then goes on to say, on the basis of this record, of the record, we find adequate reasons for the immigration judge's adverse credibility finding. So I read that to indicate that the Board was using the problems over the documents as support for the adverse credibility finding and was sustaining it on that basis as well as on the other basis about the vagueness and lack of specificity on other parts of the record. And as Your Honors have pointed out, when an individual submits documents to the court and those documents turn out to be in any adjudicatory form and those documents turn out to be of suspicious provenance, that reflects on the submitter's credibility. And in this case, there was evidence to suggest that Petitioner had been involved in the fabrication of the documents and that he had showed up at one hearing with the letter from the doctor that didn't have a date or an address. And then a month later, he showed up at a hearing with a document that did have an address and a date on it. When asked how the address and the date got on him, he really couldn't explain and tried to put it off on people in India. But he did say he never faxed them back a copy of the document. So it's not clear how the people in India would have had a copy of the document to make changes to. So, again, these problems with the documents do reflect directly, I think, on Petitioner's credibility here. This case is a little unusual in that there's no challenge to his testimony about his persecution. The immigration judge did not rule on whether, if credible, if his testimony rose to the level of persecution, if that's what you're getting at. No. I think what Judge Fletcher is saying is that the adverse credibility findings were based on, A, his knowledge of history and his party, and, B, the letters, and not on anything about his testimony regarding what happened to him. That's true. There was nothing, no direct problems with the events that he testified to. The other problems with his credibility had to do with his testimony about his political involvement and his knowledge about, well, his political involvement and knowledge about the party. Well, he wouldn't actually have to have been involved at all or have been part of the party if the persecutors thought that he was part of it. That's true. That's true. But in this case, he did argue, for example, that he was arrested when he was putting up posters. And so the fact that he claimed to have been involved in the party and putting up posters is a factor. I think he said, did he claim to be a member of the party? Yes. He did claim that he joined the party and had been sort of an inactive member for several years, from 88 to 92, or behind the scenes, and then in 93 started this more active involvement with putting up posters. And given that that is the basis for him, he said that's how he got to the attention of the police. But a person who's putting up posters that concede that he was doesn't need to know much about the party. We've got a lot of people in India who are not even literate who were participating in these political parties and political events. So I guess the one thing that troubles me about this case is there's nothing to challenge his credibility about having been persecuted. Well, getting back to the letter that he submitted from the doctor, that he submitted to establish the fact of his first arrest and the injuries he sustained after the first arrest. So the problems with the provenance of that document do pertain to his credibility about the whole story of his first arrest and the fact that he got injured in that first arrest. So I do think that the documents do go towards the incidents of the discrimination and, therefore, that there is some problem with those two incidents about the credibility of those two incidents themselves, given that he submitted a falsified document or altered document to support the story about one of the incidents. As for his other problems with his testimony about his political involvement, it goes to not necessarily the past persecution, but his well-founded fear of future persecution. He claims that he's a member of the party and that he will continue to be targeted on that basis. And, therefore, in order to evaluate whether that claim is reasonable and well-founded, we have to look at whether, in fact, he's a member of the party and whether the government would, you know, if true, whether the government would continue to be interested in him. And, therefore, the level of his involvement is relevant to that issue. And on that issue, he did – his testimony did contain a number of gaps, vague areas, and sort of a lack of detail that one would expect of someone who not only was involved in the party but was of enough interest to the authorities to be a target of persecution. For example, he – as I said, he said he was sort of a behind-the-scenes character, didn't do much until 1993, which is somewhat odd given that the main I just realized, Your Honor, I've run out of time. So I can move. Thank you very much. I would ask you to look at those – the testimony on his political involvement and we'll submit it. Thank you, Your Honor. Thank you very much. The case of A. Singh v. Ashcroft is submitted. And we're going to take a short break. Thank you. Thank you.
judges: B Fletcher, Leavy, Berzon